UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| LISA M. R[1]., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:21-cv-00148-DLP-JRS |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| Defendant. | ) | |

### Order

Plaintiff Lisa M. R. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 405(g); 1383(c). For the reasons set forth below, the Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further consideration.

### I.   Procedural History

On October 29, 2019, Lisa protectively filed her application for Title II DIB and on November 18, 2019, protectively filed her application for Title XVI SSI. (Dkt. 14-2 at 19, R. 18). Lisa alleged disability resulting from post-traumatic stress

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

disorder; bipolar I disorder; depression; anxiety; insomnia; a neck and back injury with resulting pain; and severe bunions. (Dkt. 14-6 at 6, R. 221). The Social Security Administration ("SSA") denied Lisa's claim initially on March 20, 2020, (Dkt. 14-3 at 2-3, R. 61-62), and on reconsideration on June 10, 2020. (Id. at 25-26, R. 84-85). On June 16, 2020, Lisa filed a request for a hearing, which was granted. (Dkt. 14-4 at 37, R. 143).

On September 4, 2020, Administrative Law Judge ("ALJ") Shelette Veal conducted a hearing from Orland Park, Illinois, with Lisa, her counsel, and vocational expert Stephanie Archer participating by phone. (Dkt. 14-2 at 38, R. 37). On November 4, 2020, ALJ Veal issued an unfavorable decision finding that Lisa was not disabled. (Id. at 19-31, R. 18-30). On November 4, 2020, the SSA received Lisa's appeal of the ALJ's decision. (Dkt. 14-4 at 79-81, R. 185-87). On January 15, 2021, the Appeals Council denied Lisa's request for review, making the ALJ's decision final. (Dkt. 14-2 at 2-4, R. 1-3). Lisa now seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. §§ 405(g); 1383(c).

## II.   STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments

2

must be of such severity that she is not able to perform the works he previously

engaged in and, based on her age, education, and work experience, she cannot

engage in any other kind of substantial gainful work that exists in significant

numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The SSA has

implemented these statutory standards by, in part, prescribing a five-step

sequential evaluation process for determining disability. 20 C.F.R. §§ 416.920(a)

and 404.1520(a).[2] The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a
> severe impairment or combination of impairments; (3) the
> claimant's impairment meets or equals any impairment listed in
> the regulations as being so severe as to preclude substantial
> gainful activity; (4) the claimant's residual functional capacity
> leaves h[er] unable to perform h[er] past relevant work; and
> (5) the claimant is unable to perform any other work existing in
> significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation

omitted). An affirmative answer to each step leads either to the next step or, at steps

three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920;

*Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three,

then she must satisfy step four. Once step four is satisfied, the burden shifts to the

SSA to establish that the claimant is capable of performing work in the national

economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. §

---

[2] The Code of Federal Regulations contains separate, parallel sections pertaining to disability
benefits under the different titles of the Social Security Act. The parallel sections – applying to
disability insurance benefits and supplemental security income benefits – are verbatim and make no
substantive legal distinction based on the benefit type.

416.920. (A negative answer at any point, other than step three and five, terminates the inquiry and leads to a determination that the claimant is not disabled.).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant – in light of her age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is

based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Lisa is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to [her] conclusion," *Clifford*, 227 F.3d at 872, articulating a

5

minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III. BACKGROUND

#### A. Factual Background

Lisa was 46 years old as of the alleged onset date of November 30, 2018. (Dkt. 14-6 at 2, R. 217). She obtained her GED. (Id. at 7, R. 222). She has past relevant work history as an assistant manager and a security guard. (Dkt. 14-2 at 57-58, R. 56-57).

#### B. ALJ Decision

In determining whether Lisa qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a) and concluded that Lisa was not disabled. (Dkt. 14-2 at 19-31, R. 18-30). At Step One, the ALJ found that Lisa had not engaged in substantial gainful activity since the alleged onset date of November 30, 2018. (Id. at 22, R. 21).

At Step Two, the ALJ found that Lisa suffered from the severe medically impairments of right shoulder pain; bilateral bunions; tarsal tunnel bilaterally; left bunionectomy; left tarsal tunnel release in the left ankle; anxiety; bipolar disorder;

post-traumatic stress disorder; and alcohol use disorder. (Id.). The ALJ also found

that Lisa had the non-severe impairment of obesity. (Id.). The ALJ found that Lisa's

complaints of back pain did not constitute a medically determinable impairment.

(Id.).

At Step Three, the ALJ found that Lisa's impairments did not meet or

medically equal the severity of one of the listed impairments in 20 C.F.R. §§

404.1520(d); 404.1525; 404.1526; 416.920(d); 416.925; 416.926, specifically

considering Listings 1.02, 1.03, 12.04, 12.06, and 12.15. (Id. at 23-25, R. 22-24). As

to the "paragraph B" criteria, the ALJ found that Lisa has no limitation in

understanding, remembering, or applying information or in adapting or managing

herself, but moderate limitations in interacting with others and concentrating,

persisting, or maintaining pace. (Id. at 23-24, R. 22-23). The ALJ also found the

"paragraph C" criteria not satisfied. (Id. at 24-25, R. 23-24).

After Step Three but before Step Four, the ALJ found that Lisa had the

residual functional capacity ("RFC") to perform light work, as defined in 20 CFR

404.1567(b) and 416.967(b), with the following limitations: occasionally lift twenty

pounds and frequently lift or carry ten pounds; stand or walk for six hours and sit

for six hours per eight-hour workday; occasional climbing of ramps or stairs,

ladders, ropes, or scaffolds; frequent balancing on level surfaces; occasional

stooping, kneeling, crouching, and crawling; perform detailed, but not complex

tasks; maintain sufficient attention and concentration to perform tasks with

reasonable pace and persistence; occasional contact with supervisors, coworkers, and the public. (Dkt. 14-2 at 25, R. 24).

At Step Four, the ALJ determined that Lisa was able to perform her past relevant work as a security guard. (Id. at 30, R. 29). The ALJ thus concluded that Lisa was not disabled. (Id. at 31, R. 30).

## IV.   ANALYSIS

Lisa argues that this matter should be remanded because the (1) ALJ's decision is based on cherry-picked evidence that overlooks her difficulties in functioning and fails to provide an accurate and logical bridge to support the critical findings and conclusions; (2) ALJ conducted an improper Step Three analysis; (3) ALJ inadequately considered the opinion evidence; (4) ALJ failed to build a logical bridge from the evidence to her RFC conclusions; and (5) Commissioner's Step Five decision was not supported. These issues are intertwined and, thus, the Court will consider most issues together. The Undersigned will begin with the ALJ's Step Three analysis.

### A. Step Three

First, Lisa argues that the ALJ erred by failing to adequately consider the record evidence and articulate whether Plaintiff's mental impairments met or equaled the "paragraph B" criteria for the relevant listings under 12.00. (Dkt. 9 at 22). Specifically, Plaintiff contends that the ALJ should have found marked or extreme limitations when considering the "paragraph B" criteria during the Step Three analysis, which would have resulted in her meeting Listings 12.04, 12.06, or

8

12.15. (Dkt. 16 at 20-26). The Commissioner maintains that the ALJ's findings were supported by substantial evidence. (Dkt. 18 at 6-9).

At Steps Two and Three of the five-step sequential evaluation process, mental impairments are evaluated using a "special technique" described in 20 C.F.R. § 416.920a. The first task is deciding whether the claimant has a medically determinable mental impairment by evaluating the claimant's "pertinent symptoms, signs, and laboratory findings." 20 C.F.R. § 416.920a(b). If the claimant has a medically determinable impairment, the second step requires the ALJ to determine whether the mental impairment meets or equals listing level severity at Step Three of the sequential analysis. *Leslie T. v. Saul*, No. 4:19-cv-00113-SEB-DML, 2020 WL 6586658, at *4 (S.D. Ind. Oct. 19, 2020). At this step, a claimant must prove she meets the severity criteria of either paragraph B or C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06.

Under Step Three of the sequential evaluation process, if a claimant has an impairment that meets or medically equals the criteria of an impairment found in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumptively disabled and qualifies for benefits. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). The Listings specify the criteria for impairments that are considered presumptively disabling. *Minnick*, 775 F.3d at 935 (citing 20 C.F.R. § 404.1525(a)). A claimant may also demonstrate presumptive disability by showing that her impairments are

9

accompanied by symptoms that are equal in severity to those described in a specific listing. *Id.* (citing 20 C.F.R. § 404.1526).

It is the claimant's burden to prove that her condition meets or equals a listed impairment. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). To meet or equal a listed impairment, the claimant must satisfy all of the criteria of the listed impairment with medical findings. *Minnick*, 775 F.3d at 935; *Sims*, 309 F.3d at 428; *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). Here, Listings 12.04, 12.06, and 12.15 require at least two marked or one extreme limitation in the "paragraph B" criteria.

In this case, as noted above, at Step Two the ALJ determined that Lisa had several mental impairments, including anxiety, bipolar disorder, and post-traumatic stress disorder. (Dkt. 14-2 at 22, R. 21). At Step Three of the sequential evaluation process, the ALJ analyzed Listings 12.04 (depressive, bipolar, and related disorders); 12.06 (anxiety and obsessive-compulsive disorders); and 12.15 (trauma- and stressor-related disorders) and found Lisa did not satisfy the "paragraph B" criteria.[3] (Id. at 23-24, R. 22-23). To satisfy the "paragraph B" criteria for these listings, the Plaintiff must show one extreme[4] or two marked[5]

---

[3] Listings 12.04, 12.06, and 12.15 have three paragraphs, designated A, B, and C. A claimant's mental disorder must satisfy the requirements of both paragraph A and B, or the requirements of both paragraphs A and C. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(A)(2). The ALJ determined that Lisa fails to establish the presence of the "paragraph C" criteria, and the claimant does not contest this finding. (Dkt. 14-2 at 24-25, R. 23-24; Dkt. 9).

[4] An extreme limitation means the claimant is unable to function independently, appropriately, or effectively, and on a sustained basis. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F).

[5] A marked limitation means the claimant's ability to function independently, appropriately, effectively, and on a sustained basis is seriously limited. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F).

limitations in the following broad areas of mental functioning: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(E).

Under the "paragraph B" criteria, reciting some of the medical history and the claimant's statements, the ALJ determined that Lisa had no limitations in understanding, remembering, or applying information or in adapting or managing oneself; and moderate limitations in concentration, persistence, or maintaining pace and interacting with others. (Dkt. 14-2 at 23-24, R. 22-23). To support these findings, the ALJ noted[6] Plaintiff's claimed activities on her function reports; her symptoms that she reported to her doctors at medical visits; her presentation and performance at various psychological exams; her testimony at the hearing; and her reported activities of daily living. (Id.).

While the Plaintiff argues that the ALJ's findings are unsupported, Lisa is essentially asking the Court to reweigh the evidence; this, however, the Court will not do. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) (noting the court does not reweigh evidence in reviewing an ALJ's determination). The Court is satisfied that the ALJ minimally articulated her reasoning for finding no more than moderate limitations in the "paragraph B" criteria areas.

---

[6] To evaluate these four areas, ALJs will investigate how an impairment interferes with a claimant's ability to function independently, appropriately, effectively, and on a sustained basis, as well as the quality and level of overall functional performance, any episodic limitations, the amount of supervision or assistance required, and the settings in which a claimant is able to function. 20 C.F.R. § 404.1520a(c)(2).

**B. Opinion Evidence**

Next, Lisa argues that the ALJ erred when evaluating the medical opinions in the record, specifically of Plaintiff's treating therapist and of the state agency psychologists. (Dkt. 16 at 15-20; Dkt. 19 at 6-8). In response, the Commissioner maintains that the ALJ appropriately considered each medical opinion in the record. (Dkt. 18 at 13-14).

The ALJ considered the opinion of Plaintiff's treating therapist, Ms. Caroline Blower, and the state agency psychological consultants, Drs. S. Hill and J. Gange. (Dkt. 14-2 at 28-29, R. 27-28). Under the prior regulations, "more weight [was] generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. § 416.927(c)(2). This so called "treating physician rule," however, was eliminated for claims, such as Lisa's, filed after March 27, 2017. *McFadden v. Berryhill*, 721 F. App'x 501, 505 n.1 (7th Cir. 2018). "Nonetheless, the ALJ must still provide a written explanation for [her] conclusion about the treating physician's opinion, drawing a logical bridge from the evidence to the conclusion." *Varga v. Kijakazi*, No. 3:20-cv-575-JPK, 2021 WL 5769016, at *3 (N.D. Ind. Dec. 6, 2021).

"Opinion evidence is now governed by 20 C.F.R. § 404.1520c. . . (2017)." *McFadden*, 721 F. App'x at 505 n.1. The ALJ no longer assigns "any specific evidentiary weight" to medical opinions, but rather evaluates the persuasiveness of medical opinions. 20 C.F.R. § 404.1520c. When considering the persuasiveness of

any medical opinion, an ALJ must now consider the following factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. *See Inman v. Saul*, No. 1:20-cv-231 DRL, 2021 WL 4079293, at \*2 (N.D. Ind. Sept. 7, 2021). The most important factors are the opinion's supportability and consistency. 20 C.F.R. § 404.1520c(a). These are the factors the ALJ must explicitly discuss, whereas the ALJ need only consider the other factors. 20 C.F.R. § 404.1520c(b). Failure to adequately discuss supportability and consistency requires remand. *Tammy M. v. Saul*, No. 2:20-cv-285, 2021 WL 2451907, at \*7-8 (N.D. Ind. June 16, 2021).

On August 12, 2020, Ms. Blower completed a Medical Source Statement. (Dkt. 14-7 at 286-88, R. 590-92). Ms. Blower opined that Lisa struggles with executive dysfunction due to mood and anxiety disorders and is likely to become overwhelmed by multiple instructions and time expectations, which would result in marked limitations to making simple and complex work-related decisions as well as carrying out complex instructions; and moderate limitations to understanding and remembering complex instructions. (Id. at 286, R. 590). Ms. Blower further opined that Lisa has severe anxiety in social situations, often struggling to leave her home, and that due to her PTSD she does not feel safe in public settings, which results in

extreme limitations to interacting with the public and responding to usual work situations and marked limitations to interacting with supervisors and co-workers. (Id. at 287, R. 591). Ms. Blower opined that Lisa is often forgetful and easily overwhelmed from anxiety, and that her focus is limited because of racing thoughts and restlessness, so she would struggle to concentrate, persist, or maintain pace. (Id.). Ms. Blower also concluded that Lisa would be off-task 25% or more of the workday and would be absent more than four days per month. (Id. at 288, R. 592). Ms. Blower stated that her conclusions were supported by the fact that Lisa deals with symptoms of bipolar disorder, anxiety, and PTSD on a daily basis and that it is difficult for her to maintain a sleep/wake routine, manage stress, and tend to her basic needs and activities. (Id. at 287, R. 591).

The ALJ's consideration of Ms. Blower's opinion is as follows:

> Caroline Blower, MSW, LSW, opined that the claimant had marked limitations to making simple and complex work-related decisions as well as carrying out complex instructions; moderate limitations to understanding and remembering complex instructions; extreme limitations to interacting with the public and responding usual work situations; marked limitations to interacting with supervisors and co-workers; and would be absent more than four days per month (B12F). This opinion is not found to be persuasive. Although supported by written explanations, the opined limitations are inconsistent with the overall exam findings. At times, she denied having any feelings of anxiety or depression and had an appropriate mood and affect (B1F/6, 27, B5F/7, B10F/3). The claimant reported some improvement in her panic attacks with medication and indicated that she was able to leave the home (B9F/17). She was cooperative on exam (B1F/6, 19, B10F/3). Her thought process was organized and circumstantial (B9F/24, 29, B11F/6). On exam, she was able to repeat seven digits forward and five backwards (B6F/2). The claimant reported being able to pay bills and count change (B4E/6). On exam, she was also able to perform simple calculations (B6F/3). Additionally, the claimant denied having any suicidal ideation (B1F/6, 16, 19, B11F/6). Further, the claimant was

14

able to work as a receptionist even after the alleged onset date (B6F/2). Therefore, the marked or extreme level limitations and absenteeism limitations are not consistent with the overall evidence.

(Dkt. 14-2 at 29, R. 28). Lisa argues that the ALJ improperly discounted Ms. Blower's opinion, even though it was supported by written explanations. As noted, the ALJ found Ms. Blower's opinion inconsistent with (1) Plaintiff's varying reports of symptoms and (2) the overall exam findings. In response, Lisa maintain that neither of these reasons are valid or supported by the record. The Court agrees.

The ALJ relies heavily on isolated instances throughout the record where Lisa reported limited improvement or momentary stability, but this appears to demonstrate the ALJ's misunderstanding of how bipolar disorder affects claimants. *See Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2010) ("[T]he ALJ's analysis reveals an all-too-common misunderstanding of mental illness. The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has a 'good day' does not imply that the condition has been treated.") Further, as the Seventh Circuit has noted, mere "improvement" does not necessarily mean that a claimant is not disabled, because "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." *Scott*, 647 F.3d at 740. In order to reject Lisa's allegations based on snapshots of her responses to treatment, the ALJ must connect how this improvement has restored her ability to work. *Murphy v, Colvin*, 759 F.3d 811, 818-19 (7th Cir. 2014); *Scott*, 647 F.3d at 740.

As noted above, the Seventh Circuit has directed ALJs to take into account that individuals suffering from mental illness may have "good days and bad days, and possibly good and bad months." *Bauer v. Astrue,* 532 F.3d 606, 609 (7th Cir. 2008); *see also Punzio v. Astrue*, 630 F.3d 704, 710-711 (7th Cir. 2011). Indeed, Social Security Rulings instruct an ALJ to consider that symptoms may fluctuate when evaluating inconsistencies in a claimant's statements. *Quinones v. Colvin*, No. 15 CV 6072, 2017 WL 337993, at *4 (N.D. Ill. Jan. 23, 2017) (citing SSR 16-3p, 2016 WL 1119029, at *8 ("Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time. This may explain why an individual's statements vary when describing the intensity, persistence, or functional effects of symptoms")). The ALJ must consider the entire record, including those portions of the record that do not support the ALJ's ultimate determination. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). Particularly in mental illness cases, it is important for the ALJ to evaluate the entire record, as mental illness often fluctuates. *Scott*, 647 F.3d at 739. "ALJs are strictly prohibited from making broad generalizations about the severity of bipolar disorder based on a claimant's condition during a limited period of time." *Carolyn S. v. Saul*, No. 19 C 385, 2020 WL 231085, at *8 (N.D. Ill. Jan. 15, 2020).

The ALJ concludes that Ms. Blower's opinion is supported by her written statements, but concludes that the opinion is not persuasive because it is inconsistent with the other evidence in the record. On the Court's review, however, the ALJ presents a limited view of the other evidence in the record and the ALJ

failed to grapple with the significant evidence that contradicts her conclusion. First, the ALJ does not seem to grasp the recurring and episodic nature of Plaintiff's mental disorders, and the fact that she has good days and bad days. As pointed out in the Plaintiff's brief, Plaintiff reported experiencing manic symptoms for a month in October 2018; by January 2019, she noted experiencing depressive symptoms for a month; as of November 2019, Plaintiff reported improvement in her mood due to starting a new medication; but by December 2019 she stated that her new medication was no longer stabilizing her mood; in April 2020, Plaintiff reported that a medication adjustment had been helpful and allowed her to leave home; but by May 2020, Plaintiff noted low mood and energy. (Dkt. 14-7 at 95, 122, 128, 236, 240, 245, R. 399, 426, 432, 540, 544, 549). Plaintiff even testified at the hearing that she goes through manic and depressive stages – during her manic phase she might feel okay, but during the depressive stage she cannot function or get out of bed until the stage passes. (Dkt. 14-2 at 54, R. 53). The medical evidence supports this testimony. From month to month, Plaintiff would report symptom improvement, followed by weeks of mania and then weeks of depression – and even when she reported improvement in some symptoms, other symptoms persisted or worsened. (Dkt. 14-7 at 95, 122, 127, 236, 240, 245, R. 399, 426, 432, 540, 544, 549). Perhaps most importantly, Lisa treated with therapists and physicians at Hamilton Center beginning in 2017, and no provider there deemed Plaintiff's mental disorders well-controlled or her recounting of the effectiveness of her treatments incorrect or exaggerated; instead, those providers continued to treat Lisa, increase her

medication dosage, or change her medications based on her reports. (Dkt. 14-7 at 33-146, 225-258, 267-288, R. 337-450, 529-562, 571-592).

The ALJ's citations to the record to demonstrate Plaintiff's improvement are also unavailing. Several of the visits from May and June 2019 where Plaintiff reported no anxiety or depression were for medical visits related to her physical impairments (Dkt. 14-7 at 6-7, 27, R. 310-11, 331); at a primary care visit in October 2018 where Lisa reported no current suicidal ideation, she reported that her medications were no longer helping and that she was experiencing increased insomnia (Dkt. 14-7 at 16, R. 320); and at a therapy visit in December 2019 she reported that her medications had plateaued and her mood had begun to fluctuate again with a return of her depressive symptoms, that her anxiety was debilitating, and that she continued to have panic attacks once per week. (Dkt. 14-7 at 268-271, R. 572-75). The ALJ also cites to Lisa's report of some improvement in her panic attacks and her ability to leave the home; the ALJ, however, fails to acknowledge Lisa's other reports at that same therapist visit: Lisa stated that her prescription had helped her panic attacks, but that "sometimes it doesn't feel like it's enough" and that she still wakes up in a panic attack from nightmares 2-3 times per nights; she noted that her mood had improved a bit, but that her mood had begun to fluctuate again and that she is still always anxious. (Dkt. 14-7 at 240, R. 544). The ALJ also points to Plaintiff's ability to work as a receptionist after the alleged onset date, which was a statement Plaintiff made to the state agency psychological consultant, but fails to mention Plaintiff's qualifying statement, which is that she

could only work for eight hours in a week because her panic attacks would force her to hide at work until the feeling passed. (Dkt. 14-7 at 206, R. 510). While it is true that the ALJ need not address every piece of evidence in the decision, the ALJ is not permitted to accept only the portions of the record that support her ultimate conclusion and fail to confront the evidence that contradicts it. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (ALJ erred by ignoring line of contradictory of evidence); *Denton,* 596 F.3d at 425 (same); *Kelly K. v. Kijakazi*, No. 4:20-cv-78-JVB-SLC, 2022 WL 538561, at *2 (N.D. Ind. Feb. 23, 2022) (same).

On the Court's review, the ALJ's conclusion that Ms. Blower's opinion is inconsistent with the record is based on a limited scope of the evidence at hand and demonstrates a misunderstanding of the episodic nature of Lisa's mental health disorders. Even a cursory review of the medical evidence demonstrates considerable and consistent support for Ms. Blower's conclusions. This issue is vitally important, given that the adoption of almost any of Ms. Blower's opinions could result in a finding that Plaintiff is unable to perform her past relevant work as a security guard. The Court is not confident that the ALJ adequately addressed the consistency and supportability of Ms. Blower's opinion and, therefore, this matter must be remanded for further consideration.

### C.  RFC Analysis

Lisa also contends that the ALJ erred by failing to identify an evidentiary basis for her RFC and because the RFC fails to account for all of Plaintiff's documented mental health limitations. (Dkt. 16 at 26-30; Dkt. 19 at 10). The

Seventh Circuit has defined the RFC as "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). "A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1.

The RFC is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. *Id.* at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.* An ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings), and nonmedical evidence (*e.g.*, daily activities, observations)." *Id.* at *7.

The ALJ assigned the following non-exertional imitations to address Lisa's mental health disorders: can perform detailed, but not complex tasks; can maintain sufficient attention and concentration to perform tasks with reasonable pace and persistence; and can have occasional contact with supervisors, co-workers, and the public. (Dkt. 14-2 at 25, R. 24). When explaining the justification for the assigned

RFC, the ALJ pointed to the same records and findings that the ALJ used to support his discounting of Ms. Blower's opinion. As the Undersigned has previously noted, almost all of those records are lacking the context from which they were found or are inaccurate portrayals of Lisa's actual allegations. Moreover, it is not clear how those snapshots of days of better functioning lend support for the ALJ's conclusion that these three RFC limitations adequately address Lisa's mental health symptoms. The ALJ's categorical failure to address the medical evidence that conflicts with her conclusions, namely the evidence that contradicts the idea that Lisa was stable and had improved with treatment, renders the Court unable to conduct a meaningful review as to the sufficiency of the assigned RFC limitations.

The issues regarding the evidence that the ALJ relied on to bolster her RFC is vitally important, given Lisa's next argument. Specifically, Lisa maintains that because the ALJ rejected all of the opinions regarding her mental limitations, the ALJ faced an evidentiary deficit and the RFC is thus unsupported. (Dkt. 16 at 20). As noted previously, the ALJ rejected the opinion of Plaintiff's treating therapist, with the ALJ reasoning that the opinion was unsupported by the record and her own treatment notes. (Dkt. 14-2 at 28, R. 27). The ALJ then rejected the opinions of the state agency psychologists, finding that their opinions did not account for all of Plaintiff's mental restrictions and that Plaintiff was more limited than the state agency psychologists found. (Dkt. 14-2 at 28, R. 27). No other opinion exists in the record regarding Plaintiff's functional imitations for her mental disorders.

21

The Court does not find that the ALJ should have given evidentiary weight to any of these opinions; however, once the ALJ rejected all opinion evidence on the topic of Plaintiff's mental health limitations, she was left with an evidentiary record that did not support her RFC determination. *Suide v. Astrue*, 371 F. App'x 684, 689-90 (7th Cir. 2010) (when the ALJ rejects all physician opinion evidence, an evidentiary deficit exists); *McDavid v. Colvin*, No. 15 C 8829, 2017 WL 902877, at *5 (N.D. Ill. Mar. 7, 2017) (finding that where the ALJ discounted the only medical opinions that set forth RFC determinations, "she was left with an evidentiary record that did not support her RFC determination"); *Daniels v. Astrue*, 854 F. Supp. 2d 513, 523 (N.D. Ill. Apr. 2, 2012) (finding remand necessary due to evidentiary deficit where ALJ rejected opinion of treating physician and did not mention or evaluate the only other medical opinions). As it stands, it is not at all clear how the ALJ concluded that these three RFC limitations were sufficient to address the Plaintiff's symptoms from her mental health disorders. There is no record basis to support the ALJ's RFC finding, and the ALJ's analysis does not assure the Court that the ALJ properly considered the opinion evidence of Plaintiff's treating therapist. As such, the Court concludes that remand is required as a result of the ALJ's rejection of each opinion that included mental limitations. Accordingly, the Court finds the ALJ's RFC analysis lacking, and remand is required to further address these issues.

Lastly, Lisa asserts that the ALJ's decision should be remanded for failure to address both Ms. Blower's opinion and the vocational expert's testimony regarding time off-task. (Dkt. 16 at 28-29). Because the Court has already concluded that the

ALJ's mental RFC analysis is lacking and it is case dispositive, the Undersigned will not address the remaining issue. The ALJ should take the opportunity on remand to reconsider whether "off-task time " should be included in Lisa's RFC.

**V.    CONCLUSION**

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will issue accordingly.

So ORDERED.

Date: 9/19/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:
All ECF-registered counsel of record via email.